GOSSARD v. AKERS ET AL.

*Conveyances—Warranty deed and mortgage by one without interest—Grantor subsequently acquires title—Estoppel to assert mortgage invalid—Subrogation to rights of original mortgagee.*

A, for the agreed consideration of four hundred dollars, executed and delivered to G a quitclaim deed to real estate in which A owned no interest. There was then outstanding a mortgage deed to C, securing the payment of promissory notes, which mortgage deed was also executed and delivered by A at a time when he had no interest in the premises, but the mortgage deed contained covenants of warranty of title in the said A. By agreement between A and G the indebtedness secured by the mortgage was paid by G, out of the consideration to be paid A for the quitclaim deed, and the mortgage deed was released of record. A subsequently became, and now is, owner in fee simple of the premises described in the quitclaim deed and conveyed by the mortgage deed.

*Held:* That as between A and G, A is estopped to assert invalidity of the mortgage deed, and that G is entitled to be subrogated to the rights of the original mortgagee and have cancellation of the record of the release.

(Decided—January 5, 1924.)

APPEAL: Court of Appeals for Auglaize county.

*Messrs. Stueve & Tangeman,* for plaintiff.
*Messrs. Armstrong & Flick* and *Mr. J. H. Musser,* for defendants.

CROW, J. This case, which is here on appeal and submitted on demurrers, is for the partition of lands in Auglaize county, plaintiff claiming ownership of the undivided two-sevenths under deeds of

Grover C. Akers and Alexander H. Akers, sons of Elizabeth Akers, deceased.

Alexander Hutchinson died on or about August 31, 1889, leaving a will, whereunder he devised to Elizabeth Akers the real estate sought to be partitioned herein, in these words:

"Seventh: I give, devise and bequeath to my daughter Elizabeth Akers (wife of A. L. Akers) the southwest quarter of the northwest quarter 40 acres, being Tract No. 10 in said Plat; also the north half of the southeast quarter of the southwest quarter, 20 acres, being tract No. 11 in said Plat, all in said section twenty-three (23), to have and to hold the same during her natural life, then to her heirs forever."

Elizabeth Akers died on or about November 4, 1922, leaving children, her sole heirs at law, among whom are Grover C. Akers and Alexander H. Akers.

This controversy involves only the interests of those two sons, and the rights of plaintiff and Alvin F. Akers, defendant, in relation to said interest.

The petition alleges that plaintiff acquired the two-sevenths he claims to own under and by virtue of quitclaim deeds executed and delivered to him by Alexander H. Akers and Grover C. Akers, on September 10, 1914, and October 1, 1915, respectively, which deeds were duly recorded in the county wherein the land is situated.

The answer of Grover C. Akers sets forth, among other things, an admission of the execution and delivery of the quitclaim deed by him, the language of the devise above quoted, the date and

fact of the death of Elizabeth Akers, that she occupied the premises throughout her life, that the fee simple title vested in the said heirs of Elizabeth Akers at her death, that answering defendant is the owner in fee simple of the one-seventh of the premises, and has been such owner since the death of Elizabeth Akers, and denies that plaintiff has any interest in said premises by virtue of the quitclaim deed, or otherwise.

The answer and cross-petition of Alvin F. Akers, with other allegations, pleads that on December 6, 1922, under a certain quitclaim deed executed and delivered to him by Alexander H. Akers, he became the owner of the one-seventh part of said premises, which part is one of the two-sevenths plaintiff claims to own.

Plaintiff's amended reply to the answer of Grover C. Akers avers that prior to the first day of October, 1915, Grover C. Akers was then and there indebted to the City Loan & Savings Company of Wapakoneta, Ohio, on two promissory notes amounting to two hundred dollars, which were secured by mortgage deeds conveying the undivided one-seventh of said real estate, which mortgages were duly recorded in said county; and that the mortgages contained clauses of warranty of title, and covenants of warranty of the same, which promissory notes plaintiff paid in order to protect his title to said lands, the same being a part of the consideration for the conveyance to him of the said one-seventh interest by Grover C. Akers, and that the balance of the purchase money for said conveyances was paid by plaintiff to said Grover C. Akers.

Plaintiff prays that if it cannot be adjudged

that he owns said undivided part, that he may be subrogated to the rights of the mortgagee, in the amounts so paid by him, with interest.

The amended answer of plaintiff to the cross-petition of Alvin F. Akers in part pleads that on the date of the quitclaim deed from Alexander H. Akers to plaintiff, Alexander H. Akers was indebted to the City Loan & Savings Company of Wapakoneta, Ohio, in the sum of eighty-two dollars and fifty cents, payment of which was secured by a mortgage deed dated January 16, 1914, and filed for record, January 21, 1914, conveying the one-seventh part of the real estate in contention, which said mortgage deed contained a warranty clause as to title, and covenants of such warranty, and at the request of Alexander H. Akers, and to protect the title of the plaintiff, the latter paid said mortgage indebtedness, out of the proceeds of the purchase money moving from plaintiff to Alexander H. Akers for the quitclaim deed.

It is further averred that on December 6, 1922, Alexander H. Akers had no interest in said one-seventh part, and that Alvin F. Akers knew and had been so informed, and that Alvin F. Akers conspires with Alexander H. Akers to cast a cloud on the title of plaintiff to said one-seventh of the premises.

Plaintiff prays that he may be declared to be the owner of said one-seventh part, or if that relief cannot be granted that he be subrogated as to said mortgage.

To these two pleadings of plaintiff, demurrers are filed, which raise the questions for decision.

1.  Did the quitclaim deeds from Alexander H.

Akers and Grover C. Akers convey title to the plaintiff?

This point depends on whether at the time the quitclaim deeds were delivered the grantors had title. It is settled in Ohio that a devise such as the one in the present case does not pass title, inasmuch as it cannot be known who will be the heirs of the devisee who has the estate for life, until such person has died. This rule of property forbids the claim of plaintiff that he acquired interests in the land by the deeds of quitclaim to him. *Lisle* v. *Miller,* 21 C. C. (N. S.), 317; *McCrea* v. *McCrea,* 22 C. C. (N. S.), 433.

2. Should plaintiff be subrogated to the mortgage liens paid by him, under the circumstances set forth in his pleadings?

It has long been the law, and was so recognized by an early case, *Lessee of Bond* v. *Swearingen,* 1 Ohio, 395, 412, that where one executes and delivers a deed with covenants of warranty of title, at a time when he does not own the land so conveyed, if he thereafter acquires title to such lands, he will be estopped from asserting as against such conveyance that he did not own the lands so conveyed. And this rule applies to mortgage deeds as well as to deeds not upon condition. *Philly* v. *Sanders,* 11 Ohio St., 490.

By the terms of the mortgage deeds the mortgagors who were grantors of the quitclaim deeds to plaintiff represented that they were the owners of the premises so mortgaged, and, as we have stated, warranted their title by covenants, and induced plaintiff to pay the mortgage indebtedness out of the purchase money.

In these circumstances, where the rights of others have not intervened, it must be held that there was such conduct on the part of the mortgagors as to estop them from asserting that the mortgages were invalid on account of their not owning the premises at the time the same were given.

Without here defining or discussing the several elements necessary to create estoppel, it is enough to say that all are present, and that no reason has been urged, and none can be imagined, why plaintiff should not have the benefit of the doctrine of estoppel as against Grover C. Akers, insomuch as no right or interest of any other person has arisen.

The interest of Alexander H. Akers differs in its situation from the interest of Grover C. Akers. The deed of the interest of Alexander H. Akers to Alvin F. Akers vested title in the latter, and there is no fact alleged, which if proved, would require setting that deed aside to the extent at least of making applicable the doctrine of subrogation by estoppel.

The doctrine of estoppel has grown and expanded until it now seems sufficiently broad to include all instances where one person not acting voluntarily pays an obligation for which another is primarily liable, and which in good conscience and equity should have been discharged by the latter. It is entirely equitable, and depends upon the facts and circumstances of each particular case.

Volunteers, sometimes referred to by text-writers and in cases as strangers, cannot have the benefit of subrogation, which after all is only the substitution of one person in the place of another.

Surely it could not be claimed that in paying the debts secured by the mortgage deeds, plaintiff's

relation to the mortgagors was that of a stranger or volunteer.

The entire subject of subrogation is exhaustively and accurately covered in 25 Ruling Case Law, page 1309 and following.

If there is to be no further pleading by Grover C. Akers a decree will be entered cancelling the release of his mortgage deed, and subrogating plaintiff to all the rights of the grantee, by reviving the instrument against the interest of Grover C. Akers in the lands, to the extent of the indebtedness paid by plaintiff, with interest.

*Decree accordingly.*

HUGHES and WARDEN, JJ., concur.